IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LINSEY GROESBECK and NICHOLAS GROESBECK, individually and as next friends and guardians of A.G., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBO INTERNATIONAL TRUST f/k/a JONIBACH MANAGEMENT TRUST, JONIBACH PTY, LTD. f/k/a BUMBO PTY LTD., and WAL-MART-STORES, INC.,,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 1:13-cv-00090-DB<br><br>District Judge Dee Benson |

Plaintiffs Linsey Groesbeck and Nicholas Groesbeck (individually and as next friends and guardians of A.G., a minor) filed the instant lawsuit against Bumbo International Trust and Jonibach PTY, LTD. (collectively "Bumbo") and Wal-Mart Stores, Inc. ("Wal-Mart"), alleging that Defendants created and sold an unsafe product that caused severe injuries to A.G. The case is now before the court on motions for summary judgment filed by Bumbo (Dkt. No. 71) and by Wal-Mart (Dkt. No. 70).

The court heard oral argument on the motions on July 9, 2014. At the hearing, Plaintiff was represented by Elizabeth Cunningham. Defendants were represented by Tosh Anand and Marilyn English. Prior to the hearing, the court considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

The history of this case begins in 1997 when Johan Buitendach—the father of current Bumbo CEO, Johan Buitendag—came up with the idea of the Bumbo Seat.  While Mr. Buitendach was taking care of his grandson one day, he found that the child would cry while lying down, but was perfectly content after being propped up with pillows, such that he could sit up and see his surroundings. After a while, the pillows would move out of place and the child, who was no longer sitting up, would start crying again.  Consequently, Mr. Buitendach wanted to design a seat that could help young babies fulfill their "natural desire to want to sit up."  (Dkt. No. 71-A at ¶ 4.)

After two years of development, the Bumbo Seat was initially sold on a small scale in South Africa in 1999.  The product sold so well that Bumbo expanded its market into the United Kingdom in 2001 and later into the United States in 2003.  Before releasing the product into these markets, Bumbo had the Bumbo Seat tested for safety under multiple categories by an international testing agency known as TUV.  TUV failed the Bumbo Seat under the "reclined-cradle or bouncer-seat" category because "[t]here is no restraint system available. The proposed clamping system does not comply with the requirements for the age group as given by the manufacturer." (Dkt. No. 93-7 at 1585.)  However, TUV passed the Bumbo Seat under the "toy" category.  (Dkt. No. 93-6 at 106-07.)  Being satisfied with these results, Bumbo continued expanding into new markets.

The Bumbo Seat's popularity increased as it was introduced into new markets.  In fact, as of June 24, 2012, approximately 7,802,080 Bumbo Seats had been sold worldwide.

Additionally, after originally being sold only at trade shows and local retail shops, Bumbo Seats could be purchased in Wal-Mart stores starting in 2007.

The Bumbo Seat's rise in popularity was not without its hiccups.  On October 25, 2007, Bumbo issued a voluntary recall ("2007 Recall") in conjunction with the U.S. Consumer Products Safety Commission ("CPSC") as a response to reports that some children had been hurt when parents had used the Bumbo Seat on raised surfaces.  (Dkt. No. 70-A at ¶ 8.)  The 2007 Recall emphasized that the seat should never be used on any raised surfaces and entailed (a) removing the photo on the box depicting a birthday party scene which some people reportedly viewed as depicting the Bumbo Seat being used on a raised surface; (b) adding a second printed warning on the front of the seat; and (c) revising the instruction leaflet and wording on the packaging to further emphasize that the seat should never be used on any raised surfaces.  (*Id.*) In connection with the 2007 Recall, Wal-Mart returned its entire inventory of pre-recall Bumbo Seats, which Bumbo's distributors then replaced with seats that contained the changes contemplated by the 2007 Recall.  (Dkt. No. 70-G at ¶ 9.)

In the spring of 2010, Mrs. Groesbeck bought one of the post-recall Bumbo Seats from a Wal-Mart store in Logan Utah.  There were two warnings on the box that Mrs. Groesbeck's Bumbo Seat came in—one on the lid and another on one of the box's six side panels. The warning on the lid was directly below a yellow warning triangle and stated "Prevent Falls: Never use on any elevated surface."  (Dkt. No. 70-A3.)  On the side panel, information and warnings in nine different languages were displayed beneath two yellow triangles.  (Dkt. No. 70-A4.)  The English warning stated:

> WARNING: Do not use on a raised or uneven surface, as a car seat, in a bath or in other water.  Do no use until your baby is fully able to support its head.

Depending on the physical development and age of the child, some babies will be able to move out of the Bumbo, so never leave your child unattended.

(*Id.*; Dkt. No. 93-23.)  Inside the box, Bumbo claims that there was an instruction leaflet that contained similar warnings, but Mrs. Groesbecks does not recall seeing a leaflet inside the box. (Dkt. No. 70 at 16 ; Dkt. No. 93 at 12.)   Finally, there were two warnings on the Bumbo Seat itself; one on the back and one on the front right.  The warning on the back is depicted below:



(Dkt. No. 70-A-6.)  The warning on the front right of the Bumbo Seat was located immediately below a warning triangle and is depicted below:



Although the Groesbecks do not dispute that the typical Bumbo Seat warnings were included on their Bumbo Seat, they emphasize that when a picture was taken of their Bumbo Seat—at least two years after they purchased it—the warnings had faded:



 (Dkt. No. 93 at 12.)  It is undisputed that the Groesbecks never saw or read any of the warnings that came with the Bumbo Seat until their deposition in this case.  (*Id.* at 15.)

The Groesbecks used the Bumbo Seat for two of their children without a significant incident until June 24, 2012.  On that day, Mr. Groesbeck placed A.G., his daughter, in the

Bumbo Seat on a raised surface: the kitchen bar.  As he was feeding A.G., Mr. Groesbeck's older son asked him for something from the dishwasher.  Mr. Groesbeck obliged and proceeded to open the dishwasher and reached down to get the requested item.  While he was looking away, Mr. Groesbeck heard a loud thump or bang.  When he looked back again, A.G. was gone from her spot on the bar and had fallen onto the floor.

As a result of her fall, A.G. suffered a skull fracture and a subdural hematoma.  A.G. was rushed by helicopter to Primary Children's Hospital.  A.G. underwent an emergency partial craniotomy (a surgical procedure by which her skull was removed in order to alleviate the swelling and bleeding in her brain).  (*Id.* at 83:8-16).  A.G. survived.  It is disputed whether her injuries will lead to significant long-term problems.

Plaintiffs filed the current suit on January 9, 2013, alleging that Defendants are liable under multiple strict liability and negligence causes of action.  Specifically, Plaintiffs argue that the design of the Bumbo Seat was unreasonably dangerous because of its lack of a seatbelt and that Defendants failed to adequately warn consumers of that danger.

Defendants responded by filing separate motions for summary judgment on September 30, 2014.  Wal-Mart argues that because it was not involved in designing or creating the Bumbo Seat, it cannot be held strictly liable in this case.  Additionally, both Defendants argue that they are not strictly liable because there is no evidence that the design of the Bumbo Seat was unreasonably dangerous or that the warnings accompanying the Bumbo Seat were inadequate.  Defendants also argue that this lack of evidence precludes any finding of negligence in this case.

## **DISCUSSION**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  "[T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### Strict Liability Claims

Plaintiffs allege that Bumbo and Wal-Mart are both subject to strict liability claims in this case because there was a design defect in the Bumbo Seat and because both Defendants failed to adequately warn consumers about the dangers associated with using the Bumbo Seat.  Both Defendants argue that Plaintiffs failed to provide sufficient evidence of their claims.  Wal-Mart further argues that under Utah's passive-retailer doctrine, it cannot be found strictly liable even if Plaintiffs have provided sufficient evidence of a design defect or a marketing defect.

### Passive retailer doctrine:

Utah's passive-retailer doctrine states that "a passive retailer is not subject to a strict liability claim under the Product Liability Act where the manufacturer is a named party to the action." *Yirak v. Dan's Super Markets, Inc.*, 2008 UT App 210, ¶ 5; *Sanns v. Butterfield Ford*, 2004 UT App 203, ¶ 21. A passive retailer is defined as one that "did not participate in the

design, manufacture, engineering, testing, or assembly" of the product.  *Sanns*, 2004 UT App

203 at ¶ 21.  Wal-Mart argues that because the manufacturer, Bumbo, is a named party to this

action, Wal-Mart is not subject to any of Plaintiffs' strict liability claims.  The court agrees.

     Although Plaintiffs concede that Wal-Mart did not participate in the design, manufacture,

engineering, testing, or assembly of the Bumbo Seat, they nevertheless contend that Wal-Mart is

not a passive retailer because it had actual knowledge that children were falling out of Bumbo

Seats and being seriously injured.  (Dkt. No. 93 at 25–28.)  Plaintiffs argue that *Sanns* stands for

the proposition that where a retailer has actual or constructive knowledge about the defective

nature of a product, that retailer loses its protected status.  (Dkt. No. 93 at 25.)  *See Sanns*, 2004

UT App 203 at ¶ 9.  Thus, Plaintiffs claim, Wal-Mart is not protected by the passive-retailer rule.

     Even if Plaintiffs are correct that actual knowledge invalidates the passive-retailer rule

under Utah law, Plaintiffs have not demonstrated that Wal-Mart knew about the purported

defects at the time Plaintiffs bought the Bumbo seat.  Plaintiffs provided evidence that Wal-Mart

knew in 2007 that some kids had fallen out of Bumbo Seats and had been seriously injured.

However, after receiving that information, Wal-Mart complied with the 2007 Recall, which was

supported by the CPSC.  Furthermore, Plaintiffs do not provide any evidence of Wal-Mart's

subsequent knowledge that the recall was insufficient to solve the purported problem prior to

2011.[1]  Because the Plaintiffs bought the Bumbo in 2010, Wal-Mart qualifies as a passive-

---

[1] Plaintiffs contend that an e-mail sent from a Wal-Mart employee, dated October 25, 2007 (the day of the 2007 Recall), should constitute sufficient evidence to prove this point.  However, even in Plaintiffs' own description of the e-mail, the e-mail merely "expressed concern that adding an additional warning to the Bumbo Seat would not prevent the actual problem, which was children being injured by falling out of the product."  (Dkt. No. 93 at 26.) Such an e-mail does not establish knowledge that the product was defective.  A mere expression of concern by an employee does not prove that the company knew the recall would not remedy the problem—especially in light of the fact that Wal-Mart knew that the CPSC was apparently satisfied with the product so long as the recall changes were

retailer even under Plaintiffs' interpretation of *Sanns*.  As such, summary judgment for Wal-Mart

on Plaintiffs' strict liability causes of action is granted.

### Design defect claim:

To prevail on their design defect claim against Bumbo, Plaintiffs must prove that the

Bumbo Seat was unreasonably dangerous.  *Dimick v. OHC Liquidation Trust*, 2007 UT App 73,

¶ 8.  In other words, Plaintiffs' claim survives summary judgment only if a reasonable jury could

find that the Bumbo Seat "was dangerous to an extent beyond which would be contemplated by

the ordinary and prudent buyer, consumer, or user of that product in that community considering

the product's characteristics, propensities, risks, dangers, and uses together with any actual

knowledge, training, or experience possessed by that particular buyer, user, or consumer."  Utah

Code Ann. § 78B-6-702.

Plaintiffs assert that Dr. Meyer's expert witness report demonstrates that the Bumbo Seat

is unreasonably dangerous.  After performing some tests on the Bumbo Seat, Dr. Meyer opines

that "a seatbelt, when present [on the Bumbo Seat], makes tip over or escape by a baby far less

likely, as the baby's center of mass is closer to the ground and there is less likelihood of a baby

squirming out of the seat and escaping."  (Dkt. 92 at 35.)  Dr. Meyer's report also states that

Bumbo violated industry standards and common engineering principles.  (*Id.*)

Plaintiffs additionally argue—relying on Dr. Meyer's report—that Bumbo's original

marketing scheme led ordinary and prudent consumers to believe that the Bumbo Seat could

safely be used in the exact manner Plaintiffs used it in this case.  The original marketing scheme

allegedly cultivated this belief in six ways: 1. Bumbo described the seat as "a revolutionary

---

implemented.  Moreover, the concern expressed in the e-mail dealt solely with children who might fall out of the
Bumbo Seat while they were on the ground, which is not what happened in this case.  (Dkt. No. 93-27.)

infant chair that gives a parent an 'extra set of hands' while keeping a baby safe and comfortable;" 2. "Bumbo . . . claimed that the seat possessed a special design so that the baby's own body weight keeps him or her in place;" 3. "The [original] name itself, Bumbo Baby Sitter, implies that a child can be safely left in the seat without worry that the baby would escape;" 4. "Bumbo . . . declared that no awkward straps or fasteners were required;" 5. "In conjunction with its efforts to promote the Bumbo Seat's use on an elevated surface, Bumbo posted pictures on its website - as late as 2009 - showing the product being used on tables, countertops, and even on a piano bench;" and, 6. "Bumbo[] claim[ed] that the seat was manufactured with safety as the number one priority and that it was recommended by authority figures such as pediatricians, orthopedists, and physical therapists." (*Id.* at 36.) Plaintiffs assert that these marketing tactics "worked together to ingrain parents with a false sense of security that their child could not get out of the seat." (*Id.*) Plaintiffs argue that this conclusion is supported by an e-mail sent by a CPSC employee to Bumbo stating that a 2011 incident involving a Bumbo Seat was "consistent with other data provided to you showing that Bumbo seats with additional warnings continue to be used on raised surfaces and infants continue to fall out or tip out of the product." (*Id.* at 37.)

Finally, Plaintiffs argue that their own experience with a Bumbo Seat is "perhaps the best example of consumer expectations." (*Id.*) Specifically, Mrs. Groesbeck apparently found images showing the product being used on elevated surfaces, was told that the product could be used "hands-free" on elevated surfaces by her friends, and "even observed one of her friends using the Bumbo Seat on a countertop with her own child." (*Id.*) Additionally, Plaintiffs had no problems with the Bumbo Seat when using it with their older child, and Mrs. Groesbeck testified

that she "personally thought that it was impossible for a child to get out of the product." (*Id.* at

38.)

Bumbo responds to Plaintiffs' arguments by suggesting that Plaintiffs "have presented no

competent evidence." (Dkt. No. 104 at 3–5.) Furthermore, Bumbo asserts that a simple

examination of the Bumbo Seat would inform the ordinary consumer how the product should be

used:

> Ultimately, an ordinary consumer's expectations can be easily determined by looking at
> the product itself. The ordinary consumer would see that the Bumbo Seat is a soft foam
> seat with no seatbelt or other means of restraining an infant. Further, it is covered with
> warnings to not use the product on a raised surface or leave an infant unattended because
> of the danger of falling. The ordinary user of a Bumbo Seat would have seen at least one
> of the warnings prior to using the product and appreciated that an infant should never be
> placed on a raised surface.

(*Id.* at 5.) Bumbo's arguments are well taken.

Although Plaintiffs provide evidence—including personal experience—that the Bumbo

Seat would have been safer with a seatbelt, that Bumbo Seats are sometimes used on raised

surfaces, and that infants sometimes fall out or tip out of the product, this evidence fails to

demonstrate that the Bumbo Seat was dangerous to an extent beyond which would be

contemplated by the ordinary and prudent consumer.

One of the first things anyone looking at a Bumbo Seat would notice is that there is no

seatbelt or other type of restraint. Common sense would tell the ordinary and prudent consumer

that without a restraint, there is always a chance that the user could get out of the seat. Even

assuming that ordinary and prudent consumers could not figure this out on their own, those

consumers would have realized it after reading the warnings provided in the Bumbo Seat's

packaging.

In fact, Plaintiffs note that in a customer survey conducted by a public relations firm, only 14% of Bumbo Seat users said that they never read the warning on the rear of the Bumbo Seat.  This means that six out of every seven respondents had read the specific warning on the back of the Bumbo Seat—to say nothing of how many people read any of the additional warnings included in the Bumbo Seat packaging.  Additionally, only 11% of Bumbo Seat users who responded to the survey were unaware that their babies could get out of the seat.  (Dkt. No. 92 at 28 ; Dkt. No. 92-5 at 235.)   In other words, the vast majority of Bumbo Seat users had either seen a warning that children could potentially get out of the seat or had figured it on their own.  This suggests that the ordinary and prudent consumer understood that the product could be dangerous insofar as a child may be able to get out of it.

Bumbo's position is further bolstered by the low number of falls from elevated surfaces that have been reported to the CPSC by Bumbo Seat users.  In 2012, a CPSC report stated that a total of 91 falls from elevated surfaces had been reported by Bumbo Seat users since the product was first sold in the United States in 2003.  (Dkt. No. 92-10.)  The number of falls is remarkably low considering that about 3.85 million Bumbo Seats had been sold in the United States during that time period and that—as demonstrated by the Plaintiffs' own experience—some of the Bumbo Seats were used by multiple children.  (*Id.*)  These facts clearly demonstrate either that the Bumbo Seat was designed so that falls are extremely uncommon or that the ordinary and prudent consumer understood the danger a Bumbo Seat poses and do not risk leaving a child unattended on an elevated surface.  Either way, the court finds that no reasonable jury could conclude that the Bumbo Seat is unreasonably dangerous.

Plaintiffs' theory that Bumbo's original marketing scheme fostered the belief that an unattended child would be safe in a Bumbo Seat on an elevated surface does nothing to dissuade the court from this finding.  Most, if not all, of the marketing tactics listed by the Plaintiffs were discontinued well before Plaintiffs bought their Bumbo Seat.  Therefore, the influence those tactics had on the ordinary and prudent consumer at the time Plaintiffs made their purchase is attenuated at best.  Furthermore, Plaintiffs' argument completely ignores the fact that Bumbo's marketing also included several warning about both a child's ability to get out of the Bumbo Seat and about the danger of using the seat on an elevated surface.  As will be discussed below, these warnings were adequate to address any safety issues.

Finally, Plaintiffs' argument regarding Bumbo's purported failure to meet industry standard lacks support.  In Dr. Meyer's report, which is the sole basis of Plaintiffs' argument, Dr. Meyer relied on standards relating to the safety of machinery, machine design, and machine tools. (*See* Dkt. No. 92-1 at ¶¶ 40–44.)  Accordingly, the fact that Bumbo may have failed to meet these standards is irrelevant in this case because the Bumbo Seat is neither machinery nor machine tools.  Bumbo's Motion for Summary Judgment is granted on this claim.

**<u>Failure to warn claim:</u>**

For a warning to be adequate, it must: (1) be designed so it can reasonably be expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the product; and (3) be of an intensity justified by the magnitude of the risk.  *House v. Armour of Am., Inc.*, 886 P.2d 542, 551 (Utah Ct. App. 1994) *aff'd*, 929 P.2d 340 (Utah 1996) (referencing *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330, 338 (5th Cir. 1984)).

Plaintiffs argue that the warnings provided by Bumbo failed for several reasons.  Relying on the report of Dr. Michael Wogalter, Plaintiffs assert that the warnings on the Bumbo Seat were insufficient to catch a consumer's attention because the text was too small and it faded over time.  (Dkt. No. 92 at 27–28.)  Similarly, they claim that the warnings on the box were rendered ineffective at catching the attention of consumers because of the abundance of additional information and pictures on the box that "served as an anti-warning" by "tout[ing] the purported safety of the product."  (*Id.* at 30.)  Plaintiffs also note that the box warnings were ineffective because Plaintiffs, and other consumers, were exposed to the material on the box for just a short period of time.  The court disagrees.

In this case, the quantity—two warnings on the box; one on the leaflet; and two on the product itself—and the clarity of the warnings—e.g. the warning on the front of the Bumbo Seat unambiguously states "Prevent Falls: Never use on any elevated surface"— clearly demonstrate that they were reasonably expected to catch the attention of the consumer and were and were of an intensity justified by the magnitude of the risk.  *See Blythe v. Bumbo Int'l Trust*, 2013 WL 6190284 (D. Texas) (concluding that "there is no basis for a reasonable jury to decide that this unambiguous and conspicuous warning was insufficient.").  Although the warnings on Plaintiffs' Bumbo Seat faded over time, what matters is whether the product included adequate warnings when it entered the stream of commerce.  At that time, even if the warnings on the Bumbo Seat were already faded—a proposition for which Plaintiffs provide no evidence—it is undisputed that there were at least two similar warnings included in the Bumbo Seat's packaging.  That Plaintiffs discarded the packaging shortly after their purchase does not render those warnings moot, and Plaintiffs have presented the court no legal authority stating otherwise.

Additionally, although Plaintiffs claim that the warnings did not alert the ordinary consumer of the risks involved, the risks are intuitively clear. When warnings say that a child can get out of the product and that you should never use the product on a raised surface, the risk of an injury like the one sustained in this case is obvious. It goes without saying that a child will get seriously injured if it falls from a raised surface, especially if it is a child small enough to fit in a Bumbo Seat. Therefore, the warnings are adequate as a matter of law.

### Continuing Duty to Warn Claim

Plaintiffs allege that Wal-Mart had a continuing duty to warn of the dangers associated with the Bumbo Seat.[2] Under Utah law, a seller of a product has a continuing duty to warn of a danger "if a reasonable person in the seller's position would provide such a warning." *Herrod v. Metal Powder Products*, 886 F.Supp.2d 1271, 1276-77 (D. Utah 2012). A reasonable person in the seller's position would provide a post-sale warning where: (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the problem; and (3) the warning can be effectively communicated to and acted on by those to whom a warning might be provided; and (4) the risk of harm is sufficiently great to justify the burden of providing a warning. *Id.* at 1277 (citing Restatement (Third) of Torts: Products Liability §10(b)). Plaintiffs' evidence fails to create a genuine issue of material fact as to the second and third elements.

---

[2] In their summary judgment briefing, Plaintiffs also allege that Bumbo had a continuing duty to warn. (Dkt. No. 92 at 35– 37). However, Plaintiffs never raised this claim against Bumbo in their Complaint. (See Dkt. No. 48 at ¶¶ 33, 36). Instead, Plaintiffs asserted this claim only as to Wal-Mart. (*See Id.* at ¶ 57.) Therefore, this cannot provide a basis for defeating Bumbo's summary judgment motion.

In regard to Wal-Mart's ability to identify Bumbo Seat purchasers, Plaintiffs refer only to deposition testimony that Wal-Mart could identify consumers who bought the Bumbo Seat online. (*See* Dkt. No. 93 at 39 (referencing Dkt. No. 93-26 at 14:2–14:10).)  Such testimony is irrelevant, however, because Plaintiffs did not purchase their Bumbo Seat online, but at a physical store.  Plaintiffs have failed to offer any evidence—aside from conclusory allegations— suggesting that Wal-Mart could identify in-store Bumbo Seat purchasers, or how such identification would enable Wal-Mart to communicate a warning to those purchasers. (*See id.* at 38–40.)

Instead, Plaintiffs argue that a warning could be communicated to those purchasers by posting information in its stores notifying consumers about problems with the product. (*See id.* at 39.)  Plaintiffs offer no evidence that such action by Wal-Mart would sufficiently communicate the warning to Plaintiffs or any other similarly situated purchasers. (*See id.* at 38–40.)  Nor have Plaintiffs directed this court to any authority supporting their contentions that generally "post[ing] information in its stores" would be sufficient to communicate the necessary warning to the specific consumer group at issue, or that such a generic assertion is sufficient to create a fact issue as to this element.  (*See id.*)  Because Plaintiffs have failed to show that there is a genuine issue for trial on these essential elements Wal-Mart's Motion for Summary Judgment is granted on Plaintiffs' post-sale duty-to-warn claim.

## Negligence Claims

Having found that Plaintiffs' strict liability and continuing duty to warn claims fail as a matter of law, the court likewise finds that their negligence claims fail.  Under Utah law, a plaintiff claiming negligence must prove that there was a duty owed by the defendant to the

plaintiff, that the duty was breached and that the conduct complained of was the cause in fact of the injury. *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 17, 263 P.3d 1191, 1198 (Utah Ct. App. 2011). When ascertaining whether a duty exists, a court should consider the following factors: "(1) the extent that the manufacturer could foresee that its actions would cause harm; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against it; and (4) the consequences of placing the burden on the defendant." *Slisze v. Stanley–Bostitch*, 979 P.2d 317, 320 (citing *AMS Salt Indus. v. Magnesium Corp. of Am.*, 942 P.2d 315, 321 (Utah 1997)).

Plaintiffs argue that Bumbo was negligent in designing and testing the Bumbo Seat and in failing to make a safer Bumbo Seat. Plaintiffs also argue that both Defendants were negligent in failing to warn consumers of the dangers of the Bumbo Seat. The court has found as a matter of law that the Bumbo Seat is not unreasonably dangerous and that the warnings accompanying the Bumbo Seat are not inadequate. Consequently, it is unclear to the court what duty could have possibly been breached with respect to any of Plaintiffs' negligence claims.

Additionally, Plaintiffs concede that there is no duty under Utah law to "make a safe product safer." (Dkt. No. 92 at 44; Dkt. No. 93 at 43.) *See Slisze v. Stanley-Bostitch*, 1999 UT 20, ¶ 13, 979 P.2d 317, 320 (Utah 1999) (quoting *Ruff v. County of King*, 125 Wash.2d 697, 887 P.2d 886, 891 (1995)). Because the Bumbo Seat is not unreasonably dangerous, Defendants did not have a duty to create a safer model of the product.

Finally, for the same reasons Plaintiffs' negligence claims fail, their gross negligence claims also fail. Gross negligence is a "failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 26, 171 P.3d 442, 449 (quoting *Atkin Wright & Miles v.*

*Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 335 (Utah 1985)).  In this case, there is no

evidence that Defendants were careless or reckless in any sense.  Indeed, the only conclusion a

reasonable jury could reach is that the Bumbo Seat was created and marketed in a reasonable

manner.  As such, Defendants' motions for summary judgment are granted as to all of Plaintiffs'

negligence and punitive damages claims. [3]

## CONCLUSION

        For the reasons discussed above, the court finds that summary judgment is proper for

Defendants on all claims.  Accordingly, Bumbo's Motion for Summary Judgment (Dkt. No. 71)

and Wal-Mart's Motion for Summary Judgment (Dkt. No. 70) are both GRANTED in full.

        DATED this 9th day of September, 2015.

                                BY THE COURT:

                                _____

                                Dee Benson
                                United States District Judge

---

[3] Having granted Defendants' summary judgment motions on all claims, it is unnecessary for the court to determine whether Plaintiffs offered sufficient evidence to support future medical damages.